**UNITED STATES of America**

v.

**Jairo JARAMILLO, Defendant.**

**No. CR 93–692.**

United States District Court,
E.D. New York.

Jan. 14, 1994.

Zachary Carter, U.S. Atty., Brooklyn, NY (Eric Bernstein, Asst. U.S. Atty., of counsel), for plaintiff.

Lawrence Hermann, Jackson Heights, NY, for defendant.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

Defendant, indicted for knowingly and intentionally possessing with intent to distribute cocaine in violation of 21 U.S.C. § 841, has moved to suppress evidence found in his apartment as well as statements made by him.

On April 21, 1993 Agent German Blanco of the Drug Enforcement Administration and four other such agents went to an apartment in Rego Park, Queens. They had information that the occupant was a drug dealer and that there were either drugs or money there. When Blanco knocked at the door defendant, speaking in Spanish, asked who it was. Blanco responded "police" and asked that the door be opened. Defendant complied. Blanco asked if the agents could come in. Defendant assented. When Blanco said that they were there because they had reason to believe there were drugs or money in the apartment, defendant said it was not his apartment and gave the agents permission to look around.

Blanco then presented defendant with a so-called consent to search form in Spanish and asked defendant to read it and if he had no problem to sign it.

Defendant read it. Blanco filled in defendant's name as the person giving consent, the location of the apartment, and the names of the agents to do the search. Then defendant signed it and at Blanco's request printed his name, date of birth, and address.

The agents then searched the apartment and found eight brick-shaped packages of cocaine. Defendant denied they were his. Blanco then arrested defendant and searched him, finding a wallet, a pager, and several other items. Thereafter the agents continued the search, found a stack of money, a mobile telephone, a cellular telephone, and other documents.

Blanco then read to defendant his *Miranda* rights in Spanish. Defendant said he understood and that he was willing to talk. He also signed a printed waiver of rights form in Spanish.

Blanco then interviewed defendant. He said that he had never dealt in drugs, and that the cocaine was not his but belonged to one Carlos Albert Gonzalez, defendant's acquaintance from Colombia, who was renting a room in the apartment to store personal items.

Thereafter, at the Drug Enforcement Administration office in Manhattan defendant said that Gonzalez gave him for safe-keeping the money found in the closet of the master bedroom.

At the court's request the court interpreter translated the so-called consent to search form. The pertinent portions of that translation read as follows.

Department of Justice, department against drugs, consent for search.

I, Jairo Jaramillo, it has been required of me that I give my consent to a search of my apartment situated at 64–34 102nd Street—[something is illegible here], Forest Hills, New York, and I have been advised of my rights, constitutional rights, one, to refuse that consent; two, to demand that a search warrant be obtained before any search; three, that if I consent to a search any evidence found in result of that search may be and will be used against me in any proceeding, civil or criminal; four, I have the right to consult with an attorney that I choose before or during the search and; five, at any time I can withdraw the search before—[something is illegible here].

After having been advised of my constitutional rights, I give knowing, intelligently and voluntarily waive my rights already previously mentioned and consent to a search and authorize—[and this is written in pencil or pen]—your agents, Blanco and K R U S K A L L, special agents of the department against drugs of the Department of Justice to carry out a complete search of the already described.

Defendant testified at the hearing, in substance, as follows. He rented a room to Gonzalez, a man he had met in Colombia but had not seen for a long time. When he heard banging on the door, Agent Blanco said to him to "open up, it's the police." He replied "Gladly." Blanco then entered with five or six other people with their weapons in their hands. Blanco said "We want to search this apartment because it is our understanding you sell weapons here." Defendant responded "No problem, I've never had any problems with the authorities." He then showed the agents his room, saying "I don't have any kind of weapon."

The agents then took some things from the closet and handcuffed him. Blanco then gave him two papers and asked him to read them. After he had finished reading them Blanco asked him if he understood, and defendant said that they were not very well written but that he understood. At Blanco's request he then signed them.

He testified that Blanco told him that he should sign because his wife could be arrested and his little girl taken away by the government. But he also testified that he signed the consent to search because he had "nothing to hide there in my apartment."

Defendant also called as a witness Libya Clancy, a certified Spanish interpreter. She has been an interpreter and translator in this court since 1973. At present the majority of her work is contracted for by the office of the United States Attorney for the Eastern District of New York.

She testified that she encountered the consent search form in this court in another case some years ago, and that the language was very confusing and misleading. If she were an uneducated Spanish speaker she would be very "scared" to find that she was being required to consent "because that first 'required' is very striking." She would be confused as to exactly what was going to happen to her.

Furthermore in the section saying that the person has a constitutional right to "refuse" the consent she noted that the Spanish word for "refuse" is so blurred that someone who did not know what to expect would be hard put to read it as "refused." In the past, while Ms. Clancy has not communicated directly with the Drug Enforcement Administration, she has consulted with other interpreters, all of whom found that the form was inaccurate, misleading, and confusing. She did suggest to the United States Attorney's

office that the form be retranslated and that the particular document not be used.

In addition, Ms. Clancy testified to numerous misspellings, inaccuracies, and bad Spanish in the form. In short, if a second grader in a Spanish language course in grammar school had written the form they would be graded with an "F."

The court finds it extraordinary and shocking that the Drug Enforcement Administration in New York continues to use this obviously defective and misleading form signed by defendant. It is particularly astonishing that that form would be used although some years ago the attention of the Drug Enforcement Administration was called to the defects and suggestions were made that it not be used.

It is strange that the Drug Enforcement Administration has not prepared or used a Spanish version of a consent to search form in simple language, understandable to an average Spanish speaking person. That should not be too heavy a burden for an agency which has offices in Bogota, Spain, Peru, Bolivia, and many other places where Spanish is the official language; which has in New York many agents who speak Spanish spending significant time with certified Spanish translators; and which has access to innumerable competent, certified and uncertified translators.

Where a defendant signs a form commencing with the language "It has been required of me that I give my consent to a search of my apartment" the court could draw an inference that the defendant who made a previous oral consent was under the impression that he was required to do so. Where that inference is justified by other evidence in the case, this court will not hesitate to draw it. But the defendant testified that he gladly opened the door when advised that the police had knocked and that he gave consent because he had nothing to hide.

The court is satisfied both from the testimony of both defendant and Agent Blanco that defendant was not coerced into giving oral consent to the search. Indeed, defendant testified that he told the agents that he had "no problem" with the agents making a search. He readily showed them his room. To the extent defendant's account of what occurred is inconsistent with that of Blanco, the court finds Blanco's version more credible. The court finds that defendant's consent to search the apartment was given voluntarily and without coercion.

There is no substantial basis for the claim that defendant's statement made after he was arrested should be suppressed. He was lawfully arrested after the cocaine was found. He was given his *Miranda* rights, agreed to talk, and voluntarily signed the proper form indicating he was willing to waive his rights.

The court requests the United States Attorney to make available a copy of this memorandum and order to the Drug Enforcement Administration.

The motion to suppress is denied. So ordered.